## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

GINGER L. R.,

                Claimant,

        v.

FRANK J. BISIGNANO,
Commissioner of Social Security,

                Respondent.

No. 24 C 5915

Magistrate Judge Karyn L. Bass Ehler

## MEMORANDUM OPINION AND ORDER

Ginger L. R.[1] ("Claimant") appeals the decision of the Commissioner of Social Security[2] ("Commissioner"), denying her application for disability insurance benefits and supplemental security income. For the reasons set forth below, the Court affirms the Commissioner's decision.[3]

## Background

On January 14, 2022, Claimant applied for disability benefits. (R.19). Claimant also filed an application for supplemental security income on February 3, 2022. (R.19). In both applications, Claimant alleged a disability onset date of October 5, 2021. (R.19). Her application was denied initially and on reconsideration after which Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (R.19). After conducting a hearing at which Claimant and a vocational expert testified, the ALJ denied Claimant's applications for benefits and concluded she was not disabled

---

[1] In accordance with Northern District of Illinois Local Rule 8.1, the Court refers to Claimant only by her first name and the first initial of her last name.

[2] Frank J. Bisignano was confirmed as the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he is automatically substituted as the named defendant in this case.

[3] The parties consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). [ECF No. 7].

1

under the Social Security Act. (R.19-31). Claimant appealed to the Appeals Council, which denied review. (R.1-4). Accordingly, the ALJ's decision is the final decision of the Commissioner, which is reviewable by this Court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).[4]

## Discussion

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part, sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform his past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see also Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

Applying the five-part test in this case, the ALJ found at step one that Claimant had not engaged in substantial gainful activity since October 5, 2021. (R.21). At step two, the ALJ found that Claimant has the severe impairment of "neuropathy; fibromyalgia; degenerative disc disease of the lumbar spine; bilateral hip degenerative joint disease; and right knee degenerative joint

---

[4] On April 14, 2026, the Court granted Claimant's motion to stay proceedings pending the parties' settlement discussions after Claimant had been awarded insurance benefits on a subsequent application on March 15, 2026. [ECF No. 26]. The stay was lifted on May 4, 2026. [ECF No. 29].

disease." (R.22). The ALJ also found Claimant's diagnoses of breast cancer and thyroid nodule, as well as major depressive disorder and generalized anxiety disorder, not to be severe impairments because these conditions "cause no more than minimal functional limitations." (R.22-23). Finally, the ALJ found Claimant has a nonmedically determinable impairment of tremors because "[i]n examinations the claimant has been found without tremors and there are no diagnostics which support the impairment." (R.24). At step three, the ALJ found that Claimant does not have an impairment or combination of impairments that meets or equals a listed impairment. (R.24-26.) At steps four, the ALJ determined:

> the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: she can never climb ladders, ropes, or scaffolds; she can occasionally climb ramps and stairs; she can occasionally balance, stoop, kneel, crouch, and crawl; she must avoid hazards of unprotected heights, moving dangerous machinery, vibrating tools and work surfaces; and she can frequently finger, handle, and feel bilaterally.

(R.26). The ALJ concluded Claimant was capable of performing past relevant work as a sales coordinator, and therefore found Claimant is not disabled. (R.30-31).

The Court reviews the ALJ's decision deferentially and must affirm the decision if it is supported by "[s]ubstantial evidence," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The Seventh Circuit has concluded that an ALJ's decision is "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). Though the standard of review is deferential, the court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Even if there is adequate evidence in the record to

3

support an ALJ's decision, that decision cannot be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008); *see also Warnell*, 97 F.4th at 1053-54.

### Analysis

Claimant challenges the ALJ's decision on several grounds. First, Claimant argues the ALJ failed to consider the effect of her mental impairments in combination with her other impairments in crafting the RFC, which did not include any mental limitations. Motion [ECF No. 16] at 6-8.

The ALJ acknowledged Claimant's diagnoses of major depressive disorder and generalized anxiety disorder but found in the Paragraph B analysis that Claimant had no limitations in two of the functional areas (understanding, remembering or applying information, and interacting with others) and mild limitations in the other two functional areas (concentrating, persisting or maintaining pace ("CPP") and adapting or managing oneself). (R.22-24). The ALJ concluded these were not severe impairments but stated "[n]evertheless, [she] has considered the combined effects of the severe and nonsevere impairments in assessing the claimant's [RFC] . . ." (R.22).

In determining the RFC, the ALJ described Claimant's testimony that she was unable to work due to stress and that she lost her job because she argued with her employer (R.26) but also noted in the Paragraph B analysis that Claimant "routinely denied irritability or anger issues." (R.23). While the ALJ acknowledged Claimant's testimony that she has difficulty completing tasks, the ALJ also cited evidence where Claimant stated she "does good" following written and spoken instructions and that "she usually finishes what she starts," and referenced Claimant's ability to focus on activities such as reading and painting. (R.23). At Step Four, the ALJ relied on the state agency psychologists' opinions that concluded Claimant's mental impairments were not associated with any significantly limiting symptoms including because she was able to interact appropriately with treating sources, follow treatment plans, and perform activities of daily living.

(R.29-30). The ALJ found these opinions to be consistent with record evidence including multiple normal mental status examinations. (R.30). Finally, the ALJ considered Claimant's ability to engage in daily activities including personal care, preparing meals, household chores like laundry, providing care for grandchildren, driving, shopping, managing finances, painting and reading, and crafts to "suggest a higher level of functioning than alleged by the claimant." (R.29).

The Court acknowledges most of the ALJ's analysis of Claimant's mild mental functional limitations was conducted at Step Two, but the Court must read the ALJ's decision as a whole. *See Zellweger v. Saul*, 984 F.3d 1251, 1255 (7th Cir. 2021) (decisions must be read holistically; an ALJ's reasoning and citations in one portion of her decision may support conclusions in another portion of the decision). To that end, Claimant does not address the record evidence cited by the ALJ in the Paragraph B analysis regarding Claimant's routine denials of "irritability or anger issues." (R.23).

With respect to CPP, Claimant asserts arguably contradictory positions that the ALJ ignored "Claimant's documented concentration difficulties and irritability entirely" while also stating the ALJ "clearly recognized concentration difficulties" yet omitted any CPP-related accommodations. Motion [ECF No. 10] at 8, 10. As discussed above, it is clear to the Court that the ALJ did not ignore Claimant's asserted concentration difficulties but rather assessed her as having only mild limitations in this functional area. Claimant criticizes the ALJ's analysis of her CPP functionality as "cursory" and says the ALJ's "waved away difficulties" by relying on "basic activities" like reading and painting, arguing the ALJ should have engaged in further discussion of Claimant's capacities later in the opinion. It was not impermissible, however, for the ALJ to consider Claimant's ability to engage in reading and painting as demonstrating some ability to focus on tasks. Moreover, at Step Four, the ALJ identified Claimant's ability to engage in additional daily

activities beyond reading and painting and concluded those suggest a higher level of functioning than alleged by Claimant. (R.29). Although Claimant cites case law for the proposition that the ability to engage in activities of daily living is different than the ability to perform the tasks of a full-time job, that does not mean the ALJ was not entitled to consider Claimant's ability to engage in activities such as personal care, occasional chores, helping with her grandchildren, reading, and painting in assessing the limiting effect of her impairments. To the contrary, consideration of a claimant's ability to engage in daily activities in weighing the severity of claimed symptoms is clearly allowed under the regulations. *See* 20 C.F.R. § 404.1529(c)(3)(i) (instructing ALJs to consider "daily activities" as one relevant factor in determining the severity of a claimant's symptoms); *see*, *e.g.*, *Pufahl v. Bisignano*, 142 F.4th 446, 459 (7th Cir. 2025) ("the ALJ considered Ms. Pufahl's daily activities as a factor alongside numerous other considerations in evaluating her subjective statements and ultimately finding her statements to be not entirely consistent with the evidence"); *Prill v. Kijakazi*, 23 F.4th 738, 748 (7th Cir. 2022) ("The ALJ did not err in considering . . . self-reported daily activities . . . Those activities were appropriately determined to be inconsistent with the severity and limitations of her claimed symptoms.").

In addition, Claimant does not address the ALJ's reliance on the opinions of the state consulting psychologists at the initial and reconsideration levels, who both opined that Claimant's mild limitation in CPP, along with other mild mental functional limitations, "were not associated with any significantly limiting symptoms." (R.29-30). The ALJ found these opinions to be consistent with record evidence reflecting normal mental status examinations, which the ALJ also cited in support of her Paragraph B findings. (R.23, R.29-30). Claimant primarily points to evidence showing her diagnoses of major depressive disorder and generalized anxiety disorder,

but she acknowledges the ALJ recognized those diagnoses and Claimant does not otherwise dispute the normal mental examination findings relied on by the ALJ and the state psychologists.

Moreover, "[i]t is not enough to criticize the ALJ's decision about [her] functional capacity to work. [Claimant] must point to evidence compelling the conclusion that the adverse disability decision lacks substantial support in the record." *See Morales v. O'Malley*, 103 F.4th 469, 470 (7th Cir. 2024). While Claimant notes the vocational expert testified that certain additional mental limitations would preclude Claimant's ability to perform past work, Claimant does not support her assertion that those specific limitations were warranted by the evidence. *See* Motion [ECF No. 16] at 10 (citing vocational expert testimony that limitation to simple, detailed instructions or only occasional interaction with co-workers would preclude past work). The mere fact that Claimant has diagnoses of depression and anxiety and takes psychotropic medications does not establish that she has any specific functional limitations.

Reading the ALJ's opinion as a whole, the ALJ's analysis at both Steps Two and Four comprises the ALJ's articulation of Claimant's RFC based on the combination of her physical and mental impairments, as well as why the ALJ omitted mental limitations from the RFC. *See Bradley W. v. Comm'r of Soc. Sec.*, 2024 WL 5330659, at *3–4 (C.D. Ill. Sept. 25, 2024) (ALJ's "analysis at Steps Two and Four, taken together, are the ALJ's articulation of: 1) how he made the determination he did as to [claimant's] RFC; and 2) why he ultimately omitted mental limitations from his RFC finding."). In the Court's view, the ALJ provided the requisite logical bridge from the evidence to her conclusions. *Warnell*, 97 F.4th at 1054. While the ALJ could have been clearer in explaining why no mental restrictions were included in the RFC despite the finding of mild limitations in the functional areas of CPP and adapting or managing oneself, the Court can discern the ALJ's rationale from her overall opinion. The Seventh Circuit has explained all that is required

is that "ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow [the reviewing court] to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Warnell*, 97 F.4th at 1054 (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). Claimant's argument boils down to an invitation to re-weigh evidence that was expressly considered by the ALJ rather than a circumstance where the Court is unable to discern the ALJ's reasoning for not including mental limitations in the RFC. For all these reasons, the Court concludes the ALJ's decision not to include mental accommodations in the RFC is supported by substantial evidence.

Claimant also argues the ALJ failed to properly consider her fibromyalgia as well as the combined effect of her pain and fatigue from fibromyalgia and neuropathy on her ability to work. Motion [ECF No. 16] at 9-12.

The ALJ discussed Claimant's fibromyalgia and neuropathy symptoms but ultimately found Claimant's subjective allegations as to the severity of these symptoms to be inconsistent with record evidence. The ALJ noted Claimant's "examinations have been mostly normal" and that "[i]n physical examinations, the claimant has routinely been found with full strength in her upper extremities" and "full strength in her lower extremities." (R.28). The ALJ further noted examinations found Claimant "with full range of motion in her hands, wrists, elbows, shoulders, and feet including with full grip strength." (*Id.*) The ALJ found that "[p]hysical examinations into late 2022 continued to find the claimant with full range of motion and full strength of her bilateral upper and lower extremities" and "[a]t examinations in 2023, the claimant was found with full range of motion and full strength in her hands, her wrists, elbows, her ankles, and her feet." (*Id.*) The ALJ also noted "the record reflects that conservative pharmacological care has addressed the claimant's symptoms" noting Claimant "has been prescribed medications including gabapentin for

her neuropathic pain and for her fibromyalgia," that "[i]n late 2021, the claimant reported that her neuropathy was bothersome, but not significantly painful except occasionally at night" and found that "consistent with the claimant's testimony in which she stated that her prescription of gabapentin helped 'take the edge off' as well as medical records wherein the claimant declined increased dosages of the medication indicating that her current prescription was acceptable." (*Id.*) The ALJ observed the absence of certain findings and treatment from the record, including "[t]here is no indication in the record that the claimant ever underwent an electromyography (EMG) or nerve conduction study to confirm her neuropathy" and that "the record does not contain evidence of widespread pain in all quadrants of the claimant's body and axial skeletal pain that has been ongoing, or the typical number of tender point findings necessary with a diagnosis of fibromyalgia." (*Id.*) Based on the above analysis, the ALJ concluded the RFC adequately addressed any limitations from Claimant's neuropathy and fibromyalgia. (*Id.*)

Claimant says the ALJ cherry-picked medical evidence but does not identify evidence the ALJ did not consider that would support additional limitations to accommodate Claimant's neuropathy and fibromyalgia, including from the pain resulting from those impairments. Motion [ECF No. 16] at 9. Claimant criticizes the ALJ for considering evidence of multiple normal physical examinations, citing case law that such examination findings only address functional abilities during "a brief snippet of time" and "are not particularly probative regarding sustained functioning." *Id.* Again, however, Claimant must do more than merely criticize the ALJ's conclusions and "must point to evidence compelling the conclusion that the adverse disability decision lacks substantial support in the record." *See Morales*, 103 F.4th at 470. Claimant does not point to different or additional examinations that reflect significant pain symptoms that interfered with her ability to perform activities. Similarly, Claimant criticizes the ALJ for not explaining what

additional treatment would have been indicative of more limiting symptoms but fails to address the ALJ's findings regarding the effectiveness of Claimant's medication treatment in controlling her pain. "[T]he Seventh Circuit has held that it is reasonable for an ALJ to consider a claimant's conservative treatment." *See Anthony G. v. Saul*, 2020 WL 439964, at *10 (N.D. Ill. Jan. 28, 2020) (citing *Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009)); *Carolyn R. v. Kijakazi*, 2023 WL 5748198, at *4–5 (N.D. Ill. Sept. 6, 2023) (collecting cases).[5]

The Court acknowledges the ALJ was not permitted to reject Claimant's fibromyalgia symptoms based solely on the lack of objective evidence and physical examinations showing normal strength. *See*, *e.g.*, *Akin v. Berryhill*, 887 F.3d 314, 318 (7th Cir. 2018) ("We are troubled by the ALJ's purported use of objective medical evidence to discredit [the claimant's] complaints of disabling pain because fibromyalgia cannot be evaluated or ruled out by using objective tests."); *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (explaining that an ALJ "may not discredit a claimant's testimony about her pain and limitations solely because there is no objective medical evidence supporting it"). Here, however, although the ALJ noted the absence of record evidence supporting widespread, ongoing pain in all quadrants of her body as well as the absence of any EMG or nerve conduction testing of Claimant's neuropathy, the ALJ also expressly found Claimant's fibromyalgia and neuropathy were severe impairments and did not reject these impairments based on the lack of objective evidence. In addition, the ALJ's consideration of Claimant's normal physical examinations to weigh the severity of Claimant's symptoms was not in error. "The ALJ is permitted to consider evidence beyond tender points and associated symptoms

---

[5] Claimant's one sentence assertion that the ALJ failed to "account for the effects" of Claimant's breast cancer treatment, including its "emotional toll," is perfunctory and insufficiently developed in her Motion. Motion [ECF No. 16] at 10. Claimant also did not file any reply brief in support of her appeal. Accordingly, Claimant has waived any argument regarding the effects of her breast cancer treatment. *See*, *e.g.*, *Crespo v. Colvin*, 824 F.3d 667, 673 (7th Cir. 2016) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").

to determine the severity and functional effects of a claimant's fibromyalgia." *See Pufahl v. Bisignano*, 142 F.4th 446, 456 n.13 (7th Cir. 2025) (citing SSR 12-2p, 2012 WL 3104869 (July 25, 2012)). Moreover, as discussed above, the ALJ did not rely solely on normal physical examinations to conclude the RFC adequately accommodated Claimant's pain from fibromyalgia. The ALJ also considered the Claimant's testimony that medication reduced her pain symptoms, as well as record evidence that Claimant declined increased dosages of her medications. *See Padua v. Bisignano*, 145 F.4th 784, 789–90 (7th Cir. 2025) (in fibromyalgia case, ALJ properly considered evidence that examinations "revealed no abnormal findings" and that claimant "generally performed well on physical exams" as well as "that conservative treatment measures, such as generic medications and home exercise, generally stabilized her fibromyalgia symptoms"). Finally, Claimant does not articulate specific additional functional limitations that she claims should have been included in the RFC to accommodate her fibromyalgia and neuropathy symptoms. The Court declines to re-weigh the evidence and find that more significant functional restrictions were necessary to accommodate those impairments. Accordingly, the Court concludes the ALJ did not err in considering normal physical examinations, among other evidence, in weighing the severity of Claimant's fibromyalgia and neuropathy symptoms.

Claimant's final argument is that the ALJ did not support the RFC limitation that Claimant can "frequently finger, handle, and feel bilaterally" with her hands with substantial evidence. Motion [ECF No. 16] at 13-15. Claimant notes the vocational expert testified that a restriction to occasional hand use would be work-preclusive and suggests the ALJ tailored the RFC to avoid this outcome. *Id.* Claimant says the ALJ does not support why she "determined that, despite Plaintiff's neuropathy and fibromyalgia, she would be able to frequently use her hands." *Id.* at 13.

11

While the Court agrees the ALJ's discussion of this RFC restriction is sparse, the Court again declines to re-weigh the evidence to assign a more significant restriction. The ALJ discussed Claimant's neuropathy and fibromyalgia diagnosis but noted "examinations have been mostly normal" and that Claimant "has routinely been found with full strength" in her upper and lower extremities, as well as "full range of motion in her hands, wrists, elbows. . ." (R.28.) The ALJ stated "[p]hysical examinations into late 2022 continued to find the claimant with full range of motion" and "[a]t examinations in 2023, the claimant was found with full range of motion and full strength in her hands, her wrists, elbows." (*Id.*) As noted above, Claimant responds that brief examinations are not "particularly probative regarding sustained functioning." Motion [ECF No. 16] at 9, 13. While that may be so in the abstract, Claimant does not explain why record evidence of repeated physical examinations showing Claimant's full range of motion and strength in her hands and wrists was not relevant and appropriate for the ALJ to consider in assessing Claimant's functional ability to use her hands.

Although Claimant does not directly identify record evidence that contradicts the normal examination findings the ALJ relied on, Claimant does state in the introduction to the Motion that "[s]he has experienced a history of neuropathic symptoms, including pain in her feet and hands." Motion [ECF No. 16] at 2 (citing R.1063, R.1074, R.1222). The cited reports contain some references to hand numbness and the 11/29/22 report in particular states "neuropathy to hand and feet persists, has hard time fine motor tasks." (R.1222). Claimant, however, does not articulate how these records support the addition of any particular hand use limitation in the RFC, including a greater restriction to occasional, rather than frequent, hand use. Instead, Claimant primarily relies on her testimony that "she has trouble with her hands because of neuropathy and tremors" and that "her hands are always numb and recent tremors have made it more difficult to use them." Motion

[ECF No. 16] at 13-14. The ALJ noted testimony Claimant's testimony about tremors, numbness, shaking and pain in her hands, but also considered Claimant's testimony "that her tremors are intermittent and occur mostly in her left hand" and that "she takes gabapentin for her neuropathy and that it is effective in taking the edge off." (R.26). As discussed above, the ALJ referenced Claimant's statement in a medical report in 2021 that her neuropathy was "bothersome, but not significantly painful except occasionally at night," found "conservative pharmacological care has addressed the claimant's symptoms," and noted that Claimant did not undergo any electromyography or nerve conduction study of her neuropathy symptoms. (*Id.*) While Claimant says the ALJ improperly drew medical conclusions from the absence of such nerve studies, Claimant does not otherwise address the ALJ's findings regarding the effectiveness of Claimant's medication treatment. As noted above, it is reasonable for an ALJ to consider a claimant's conservative course of treatment. *See*, *e.g.*, *Anthony G.*, 2020 WL 439964, at *10; *Carolyn R.*, 2023 WL 5748198, at *4–5.

Once again, although the ALJ could have better explained why she concluded this evidence supported Claimant's ability to engage in frequent handling, fingering and feeling with her hands, the Court is able to discern the ALJ's reasoning. The Court concludes the ALJ found Claimant's hand pain was adequately managed with conservative treatment and medication and that her normal physical examinations showing full strength and range of motion in her hands supported her ability to frequently use her hands.

Finally, Claimant acknowledges the ALJ considered the corroborative statement submitted by Claimant's daughter but says the ALJ did not explain why she found the daughter's statement regarding Claimant's hand use limitations to be inconsistent with the record evidence. Motion [ECF No. 16] at 14. The ALJ stated she "considered the personal observations of . . . the claimant's

13

daughter" and found the daughter's "statements are generally consistent with the statements of the claimant; however, they are generally not consistent with the medical evidence of record . . ." (R.30.) The Court understands this statement from the ALJ to refer back to the prior explanation in the opinion for why record evidence does not support the extent of Claimant's subjective symptoms. (R.26-29). Moreover, Claimant only generally asserts that her daughter's statement corroborated that Claimant "has trouble using her hands." Motion [ECF No. 16] at 14; (*see also* R.347 (daughter's checkbox form indicating Claimant's ability to use hands is affected but without quantifying to what extent)). Claimant does not explain why she believes the ALJ should have interpreted the daughter's statement as necessarily supporting a greater RFC restriction to "occasional" hand use rather than "frequent" hand use.

For all these reasons, the Court concludes the frequent fingering, handling and feeling hand use limitation in the RFC is supported by substantial evidence.

### CONCLUSION

Accordingly, for all the reasons set forth above, Claimant's Memorandum in Support of Reversing or Remanding Commissioner's Decision [ECF No. 16] is denied and Commissioner's Motion for Summary Judgment [ECF No. 20] is granted.

It is so ordered.

_____
Karyn L. Bass Ehler
United States Magistrate Judge

Dated: June 30, 2026

14